# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| DENNIS EARL YOUNG, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 4:21-cv-00118-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Dennis Earl Young, Jr. ("Young") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Young timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record, and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On June 26, 2018, Young protectively filed an application for a period of disability and DIB, alleging disability beginning September 3, 2016. (Tr. 21, 354-60). After the agency initially denied his application, Young requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 180-202). An ALJ held hearings in January 2020 and June 2020. (Tr. 46-85, 169-79). The

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (*See* doc. 11).

ALJ issued an unfavorable decision on July 8, 2020, finding Young not disabled. (Tr. 18-45). Young requested review of the ALJ's decision, but the Appeals Council denied his request on December 9, 2020. (Tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On January 26, 2021, Young initiated this action. (*See* doc. 1).

Young, a United States Navy veteran, was 45-years-old when the ALJ issued the decision. (Tr. 18, 354). He has at least a high school education and past work as a plumber. (Tr. 53, 393). Young alleges disability beginning September 3, 2016, based on lower back pain, anxiety disorder, depression disorder, borderline personality disorder, bipolar disorder, bulging disc in his back, pain radiating down both legs, and a right knee replacement. (Tr. 392).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

>     by the [Commissioner];
> (4) whether the claimant can perform his or her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Young met the insured status requirements of the Social Security Act through December 31, 2021, and that Young had not engaged in substantial gainful activity since September 3, 2016, the alleged onset date. (Tr. 23). At Step Two, the ALJ found Young had the following severe impairments: obesity, degenerative disc disease of the lumbar spine, status/post multiple right knee surgeries including total knee replacement, tendinosis in the right shoulder, depression and anxiety. (Tr. 24). At Step Three, the ALJ found Young did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24-26).

Before proceeding to Step Four, the ALJ determined Young's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. §

404.1545(a)(1). The ALJ determined Young had the RFC to perform a reduced range of light work as defined in 20 CFR 404.1567(b).[4] (Tr. 29-30). The ALJ further explained as follows:

> [L]ight work as defined in 20 CFR 404.1567(b) except no climb [sic] ladders, ropes, scaffolds; no more than occasional climbing of stairs, no kneeling, crouching, or crawling, no pushing/pulling with the right lower extremity; no excessive vibration, unprotected heights or hazardous machinery; no more than occasional overhead reaching with the dominant right upper extremity; no more than occasional pushing and pulling with the right upper extremity; frequent stooping, sitting up to six hours in a normal day, but standing and walking for a total of no more than four hours. The individual could perform unskilled work with occasional work place changes with no assembly line production requirement; has the ability to maintain concentration, persistence and pace for two-hour periods at a time, no direct contact with the general public, work that does not require teamwork or coordination with others.

(Tr. 26).

At Step Four, the ALJ determined Young was unable to perform any past relevant work. (Tr. 36). At Step Five, the ALJ considered Young's RFC in conjunction with testimony from a vocational expert ("VE") and found Young could perform other jobs existing in significant numbers in the national economy, including the occupations of merchandise marker, clerical assistant, and router. (Tr. 36-37, 80-81). Therefore, the ALJ determined Young had not been under a disability from the alleged onset date of September 2, 2016, through the date of the decision

---

[4] "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 404.1567(b).

and denied Young's claim.  (Tr. 37-38).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Young contends the ALJ erred (1) by not mentioning Young's VA Disability Rating and (2) in evaluating the opinions of Dr. June Nichols and Dr. C. William Hartzog.  (Doc. 14 at 24-29).  Young also broadly asserts "[t]he denial was not based on substantial evidence."  (*Id.* at 4).

### A. The ALJ Followed the New Regulations as to Young's VA Disability Rating

Young contends the ALJ erred by failing to acknowledge the VA Disability Rating and according it no weight. (Doc. 14 at 24-25).

The agency has adopted a new rule for evaluating decisions by other governmental agencies, which applies to claims, such as Young's, filed on or after March 27, 2017.  20 C.F.R. § 404.1504; *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,848 (Jan. 18, 2017).  The new rule states:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs . . . make disability . . . and other benefits decisions for their own programs using their own rules.  Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules.  Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you

6

are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 (emphasis added).

Following notice and comment, the agency provided the following reasons for not requiring its adjudicators to analyze decisions from other government agencies:

> . . . (1) the Act's purpose and specific eligibility requirements for disability and blindness differ significantly from the purpose and eligibility requirements of other programs; (2) the other agency or entity's decision may not be in the record or may not include any explanation of how the decision was made, or what standards applied in making the decision; (3) our adjudicators generally do not have a detailed understanding of the rules other agencies or entities apply to make their decisions; and (4) over time Federal courts have interpreted and applied our rules and Social Security Ruling (SSR) 0603p differently in different jurisdictions.

82 Fed. Reg. 5,848.

These regulations provide that, for claims filed on or after March 27, 2017, such as Young's claim, the agency's adjudicators will not provide any analysis about a decision made by a government agency, such as the VA. 20 C.F.R. § 404.1504. However, the agency will consider the evidence underlying such decisions that the agency has received in accordance with 20 C.F.R. § 404.1513(a)(1)-(4). The ALJ's decision complies with the agency's new rule. (*See* tr. 21-38).

Furthermore, the record indicates the ALJ considered the "entire record" in assessing Young's RFC, which includes evidence that supported (or did not support) the VA rating. (Tr. 21-38, 26). In his reply, Young asserts the ALJ "fail[ed] to evaluate the evidence supporting the VA Disability Rating" (doc. 16 at 7), but points to no specific evidence the ALJ failed to consider.

### B. The ALJ Followed the New Regulations as to Evaluating Opinions from Dr. June Nichols (examining psychologist) and Dr. C. William Hartzog (treating physician)

Young asserts the ALJ failed to accord proper weight to the opinions of Dr. Nichols and Dr. Hartzog. (Doc. 14 at 3-4). Because Young's argument relies on the old, inapplicable

7

regulations and the prior case law on the "treating physician rule," this argument fails to establish any error.[5]

The ALJ did not need to assign weight to these opinions or apply the "treating physician rule" under the current regulations. 20 C.F.R. §§ 404.1520c(a)-(b). The "treating physician rule" was part of the regulatory framework applicable to applications filed before March 27, 2017. Under those regulations (and Eleventh Circuit caselaw interpreting them) a treating physician's testimony was entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), in turn citing 20 C.F.R. § 404.1527(d)(2)) (internal quotations omitted). However, for claims filed on or after March 27, 2017, such as this case, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a); *see Harner v. SSA,. Commr.*, No. 21-12148 (11th Cir. June 27, 2022). Instead, the ALJ is required to "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions," 20 C.F.R. § 404.1520c(b), taking into account the following five factors:

   (1) Supportability
   (2) Consistency
   (3) Relationship with the claimant (which includes)
       (i) Length of the treatment relationship
       (ii) Frequency of examinations
       (iii) Purpose of the treatment relationship
       (iv) Extent of the treatment relationship
       (v) Examining relationship

---

[5] Notably, under the prior rules, Dr. Nichols would not be considered a treating physician because she had examined Young only once. *See McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir.1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians).

  (4) Specialization
  (5) Other factors

20 C.F.R. § 404.1520c(c).  The ALJ must explain how he or she considered the factors of supportability and consistency—the most important factors—and may (but is not required to) explain how he or she considered the other remaining factors.  20 C.F.R. § 416.920c(b)(2).

  Since the ALJ was not bound by the treating physician rule, Young's only claim of error fails.  In the alternative, although Young does not contend the ALJ's evaluation of the medical opinion evidence under the new regulations was erroneous, substantial evidence supports the ALJ's evaluation of Dr. Nichols' and Dr. Hartzog's opinions.

  **1. Dr. Nichols**

  Dr. Nichols conducted a psychological evaluation of Young on May 13, 2020.  (Tr. 1974-80).  Dr. Nichols' report summarized medical records provided to her, including a medical source statement provided by Guy Walker, Ed. D., indicating extreme impairments in (among other things) Young's: daily activities; ability to remember and carry out instructions; ability to understand, remember, and carry out repetitive tasks; maintain attention/concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain a routine without special supervision; complete a normal work week without interruptions; and respond appropriately to supervision and to customary work pressures.  (Tr. 1974-77).

  Dr. Nichols herself conducted a mental status examination, resulting in largely normal findings apart from Young's affect (sad), mood (depressed), energy (decreased), and the presence of anhedonia.  (Tr. 1978-79).  Dr. Nichols also found Young had some problems with working memory.  (Tr. 1978).  She administered the Similarities and Information Subtests of the Wechsler Adult Intelligence Test, Fourth Edition, which yielded a Verbal Comprehension Index score of 83

9

(indicating Low Average intelligence). (Tr. 1979). Dr. Nichols also took Young's self-report of daily activities, including a variety of psychological symptoms including depressed mood, poor concentration, forgetfulness, and indecisiveness. (Tr. 1979).

>Dr. Nichols ultimately concluded:
>
> Mr. Young can understand, remember and carry out very short and simple instructions. He cannot maintain attention, concentration and/or pace for periods of at least two hours due to pain and medication. He cannot perform activities within a schedule and be punctual within customary tolerances. He cannot sustain an ordinary routine without special supervision. He cannot adjust to routine and infrequent work change. He cannot interaction [sic] with supervisor [sic] and/or coworkers. In addition to normal workday breaks, he would likely be off task 80% of an hour day [sic]. In a 30 day period, he would likely fail to report to work 25 to 30 days due to his psychological symptoms. His limitations have existed back to 9/3/16.

(Tr. 1980).

The ALJ found Dr. Nichols's opinion unpersuasive because it was neither supported by the results of her own examination nor consistent with other medical records. As to supportability, the ALJ observed Dr. Nichols' opinion appeared to rely heavily on Dr. Walker's assessment rather than Dr. Nichols' own evaluation. (Tr. 34-35). The ALJ previously found Dr. Walker's opinion unpersuasive because Dr. Walker is a Doctor of Education, not a medical professional, and in any case his opinion was neither consistent with nor supported by the other evidence of record. (Tr. 34). As discussed above, and as the ALJ noted, Dr. Nichols' own observations included many normal findings, such as: mood within normal limits; congruent thought processes; no evidence of confusion, loose associations, flight of ideas or thought blocking; normal conversational pace; no delusions or hallucinations; no response to internal psychotic process; good insight and judgment; and the ability to interpret proverbs and complete similar items. (Tr. 35, 1978). Despite her relatively normal findings, Dr. Nichols' conclusions mirror the extreme limitations Dr. Walker imposed. The ALJ appropriately found Dr. Nichols' opinion lacked support in her own evaluation.

*See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (explaining supportability considers the objective medical evidence and supporting explanations presented by a medical source to support his medical opinion).

As to consistency, the ALJ found Dr. Nichols's opinion was inconsistent with treatment records after April 2018 showing intact memory and concentration, a logical thought process, relevant thought content, and regular rate of speech (tr. 35, 1024, 1077-78) and further inconsistent with mental health treatment records documenting no deficits in attention, concentration, or pace (tr. 35, 809, 1078, 1949). A review of these records bears out the ALJ's conclusion.

The ALJ provided substantial evidence supporting her conclusion Dr. Nichols' opinion was unpersuasive. Young points to no evidence undermining this conclusion. Accordingly, there is no basis to reverse the Commissioner's decision.

**2. Dr. Hartzog**

Dr. Hartzog of Gadsden Orthopaedic Associates provided a physical capacities form dated June 16, 2020. (Tr. 1983). On that form, Dr. Hartzog indicated Young can sit upright for 30 minutes at a time, stand for 30 minutes at a time, and would be lying down, sleeping, or sitting with legs propped up for 4 hours per 8-hour workday. (Tr. 1983). Dr. Hartzog also indicated Young would be off-task for 75% of an 8-hour workday and would fail to report to work for 10-15 days per 30-day period. (Tr. 1983). Dr. Hartzog indicated these limitations were caused by severe lumbar degenerative disc syndrome and severe osteoarthritis in Young's knee, along with a knee replacement complicated by infection. (Tr. 1983).

The ALJ's conclusion Dr. Hartzog's opinion was unpersuasive was supported by substantial evidence. As to supportability, as the ALJ noted (tr. 35), there is nothing internal to the physical capacities form supporting the limitations Dr. Hartzog found. The ALJ also observed there were very few examinations by Dr. Hartzog supporting these restrictions, particularly after

Young's total right knee replacement on December 28, 2016.[6] (Tr. 35). As to consistency, earlier in her opinion, the ALJ highlighted post-surgery treatment notes from Dr. Andrew Hester of Gadsden Orthopaedic Associates (who appears to have been Young's primary treating orthopedic physician) indicating that in January 2017, the range of motion in Young's knee was improving. (Tr. 28, 682-83). Subsequent treatment notes also indicated improvement with no mention of adverse symptoms, culminating in the observation that Young had "full ROM" on April 25, 2017. (Tr. 683-692). The ALJ also found Dr. Hartzog's opinion inconsistent with other record evidence dated after Young's knee replacement, specifically examinations showing very few functional limitations following the initial healing period. (Tr. 36).

Young does not point to any record evidence that would contradict the ALJ's conclusions, which are otherwise supported by substantial evidence. Accordingly, there is no basis for reversal.

### C. Other Arguments

Finally, Young argues the denial is not based on substantial evidence because the ALJ "failed to find that []Young met the Listings" and "relied on vocational expert testimony that was not based on a correct or full statement of [Young's] limitations and impairments." (Doc. 14 at 28). Young offers no additional argument or support for this one-time assertion that he met a Listing and this appears not to be a serious allegation. (*See* docs. 14 & 16). Instead, Young points to the August 14, 2020, Independent Medical Evaluation provided by Dr. Jerrod Warren, and contends the court has a duty to review new evidence submitted to the Appeals Council to determine if the Appeals Council erred in denying review. (Doc. 14 at 28) (citing tr. 13-16). To the extent Young argues the Appeals Council did not consider this evidence, the Appeals Council

---

[6] Young indicates he developed sepsis after this surgery, but treatment notes reflect he developed sepsis after an earlier procedure. (*See, e.g.,* tr. 668) (July 26, 2016 procedure treating Young for a septic right knee).

Notice specifically addresses and explains that it found the letter from Dr. Warren not chronologically relevant because it does not relate to the period at issue. (Tr. 2). Young points to nothing to show otherwise.

### VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the Commissioner of Social Security's decision denying Young's claim for a period of disability and DIB is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 29th day of September, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE